PHILLIP A. TALBERT
Acting United States Attorney
MATTHEW THUESEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED
Apr 29, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>          v.<br><br>AKOP ATOYAN,<br><br>                      Defendant. | CASE NO.  2:21-cr-0084 KJM<br><br>18 U.S.C. § 1349 – Health Care Fraud Conspiracy; 18 U.S.C. § 371 – Conspiracy to Pay and Receive Health Care Kickbacks; 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

I N F O R M A T I O N

COUNT ONE: [18 U.S.C. § 1349 – Health Care Fraud Conspiracy]

The United States Attorney charges:

AKOP ATOYAN,

defendant herein, as follows:

INTRODUCTION

At all relevant times,

1.      The Medicare Program ("Medicare") was a federal health care program providing benefits to persons 65 and older and persons with certain disabilities. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), which was a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as "beneficiaries."

2.      Medicare was a "health care benefit program," as defined in 18 U.S.C. § 24(b), and a

"Federal health care program," as defined in 42 U.S.C. § 1320a-7b(f).

3. Medicare was divided into four parts that covered different services. As relevant to this Information, Medicare Part A provided coverage for home health care services, including in-home physical therapy, skilled nursing, and occupational therapy, as well as hospice services.

4. To participate in Medicare Part A, a health care provider was required to submit an application form known as a CMS Form 855A. An authorized representative of the provider was required to sign the application, which contained a certification statement that provided:

> I agree to abide by the Medicare laws, regulations, and program instructions that apply to this provider. . . . I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare.

5. CMS Form 855A contained additional certifications, including that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

6. Once approved to participate in Medicare Part A, a provider obtained a Medicare provider number. The provider used the Medicare provider number to submit claims to Medicare requesting reimbursement for Part A services it provided to beneficiaries. Medicare required that a claim set forth the beneficiary's name, the type and cost of the services rendered, and the date the services were rendered. Medicare paid reimbursement for Part A services directly to the provider, rather than to the beneficiaries who received services.

7. Medicare would not reimburse a provider for services where the underlying referral for those services was procured through the offer or payment of a kickback or bribe.

8. AKOP ATOYAN and Liana Karapetyan, charged elsewhere, lived in El Dorado Hills, California. AKOP ATOYAN and Liana Karapetyan owned, beneficially owned, and controlled ANG Health Care, Inc. ("ANG"), Excel Home Healthcare, Inc. ("Excel"), and Excel Hospice, Inc. ("Excel Hospice") (each "an Agency" and, collectively, "the Agencies").

9. John Eby, charged elsewhere, lived in Fair Oaks, California. John Eby was a licensed registered nurse who worked as a case manager at Hospital 1. In his role at Hospital 1, John Eby assisted

Medicare beneficiaries in selecting post-acute care providers, including home health care and hospice agencies, following their discharge from Hospital 1. Although not authorized to do so, John Eby was able to and did steer Medicare beneficiaries to specific providers he selected.

10. Marketer 1 was an individual who obtained Medicare beneficiary referrals for the Agencies.

11. Anita Vijay, charged elsewhere, lived in Sacramento, California. Anita Vijay worked as the Social Services Director at Skilled Nursing Facility 1. In her role at Skilled Nursing Facility 1, Anita Vijay assisted Medicare beneficiaries in selecting home health care and hospice agencies, following their discharge from Skilled Nursing Facility 1. Although not authorized to do so, Anita Vijay was able to and did steer Medicare beneficiaries to specific providers she selected.

12. Jai Vijay, charged elsewhere, was Anita Vijay's husband and lived in Sacramento, California.

13. Mariela Panganiban, charged elsewhere, lived in Elk Grove, California. Mariela Panganiban worked as the Director of Social Services at Skilled Nursing Facility 2. In her role at Skilled Nursing Facility 2, Mariela Panganiban assisted Medicare beneficiaries in selecting home health care agencies, following their discharge from Skilled Nursing Facility 2. Although not authorized to do so, Mariela Panganiban was able to and did steer Medicare beneficiaries to specific providers she selected.

14. Co-conspirator 1 was related to AKOP ATOYAN and Liana Karapetyan and lived in El Dorado Hills, California.

15. Person 1 was AKOP ATOYAN and Liana Karapetyan's son and lived in El Dorado Hills, California.

16. ANG was a home health care agency located in Folsom, California. ANG was a Medicare provider that submitted claims to Medicare for Part A services.

17. Excel was a home health care agency located in El Dorado Hills, California. Excel was a Medicare provider that submitted claims to Medicare for Part A services.

18. Excel Hospice was a hospice agency located in Folsom, California. Excel Hospice was a Medicare provider that submitted claims to Medicare for Part A services.

19. Hospital 1 was a non-profit community hospital located in Sacramento, California.

20. Skilled Nursing Facility 1 was skilled nursing and assisted living facility located in Sacramento, California.

21. Skilled Nursing Facility 2 was a skilled nursing facility located in Roseville, California.

## THE CONSPIRACY

22. From in or around at least July 2015, and continuing through in or around April 2019, in the State and Eastern District of California, AKOP ATOYAN and Liana Karapetyan knowingly and willfully combined, conspired, confederated, and agreed with each other and others known and unknown to the United States to violate 18 U.S.C. § 1347, that is, to execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## MANNER AND MEANS

The manner and means by which AKOP ATOYAN and Liana Karapetyan sought to accomplish the objects and purposes of the conspiracy included, among others, the following:

23. AKOP ATOYAN and Liana Karapetyan established the Agencies and obtained and maintained Medicare provider numbers for the Agencies to submit claims to Medicare for the cost of Medicare Part A services.

24. AKOP ATOYAN and Liana Karapetyan controlled the day-to-day operations of the Agencies.

25. On behalf of the Agencies, AKOP ATOYAN, Liana Karapetyan, and others falsely certified to Medicare that they would comply with all Medicare laws, rules, and regulations, including by not paying kickbacks for beneficiary referrals.

26. Despite their certifications to Medicare, and knowing it was unlawful, AKOP ATOYAN and Liana Karapetyan offered and paid kickbacks to multiple individuals, including marketers and individuals employed by health care facilities, as well as the employees' spouses, in exchange for Medicare beneficiary referrals to the Agencies for home health care and hospice services covered by Medicare.

27. AKOP ATOYAN and Liana Karapetyan also directed others to pay beneficiary referral sources kickbacks on their behalf, including Marketer 1 and Person 1.

28. Individuals to whom AKOP ATOYAN and Liana Karapetyan paid and directed others to pay kickbacks for Medicare beneficiary referrals to the Agencies included John Eby, Marketer 1, Anita Vijay, Jai Vijay, Mariela Panganiban, and Co-conspirator 1.

29. AKOP ATOYAN and Liana Karapetyan paid kickbacks in cash and by checks.

30. In total, AKOP ATOYAN, Liana Karapetyan, and others caused the Agencies to submit over 8,000 claims to Medicare for the cost of home health care and hospice services purportedly provided to Medicare beneficiaries. Based on those claims, Medicare paid the Agencies approximately $31,000,000 in reimbursement.

All in violation of Title 18, United States Code, Section 1349.

COUNT TWO: [18 U.S.C. § 371 – Conspiracy to Pay and Receive Health Care Kickbacks]

1. Paragraphs 1 through 21 of Count One of this Information are re-alleged and incorporated by reference as if fully set forth herein.

## THE CONSPIRACY

2. From in or around at least July 2015, and continuing through in or around April 2019, in the State and Eastern District of California, AKOP ATOYAN, Liana Karapetyan, John Eby, Anita Vijay, Jai Vijay, Mariela Panganiban, and Co-conspirator 1 willfully combined, conspired, confederated, and agreed with each other and others known and unknown to the United States to commit certain offenses against the United States, that is:

    a. to knowingly and willfully offer and pay any remuneration (including any kickback, bribe, or rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare, a federal health care program as defined in 42 U.S.C. § 1320a-7b(f), in violation of 42 U.S.C. § 1320a-7b(b)(2)(A); and

    b. to knowingly and willfully solicit and receive any remuneration (including any kickback, bribe, or rebate) directly and indirectly, overtly and covertly, in cash and in

kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare, a federal health care program as defined in 42 U.S.C. § 1320a-7b(f), in violation of 42 U.S.C. § 1320a-7b(b)(1)(A).

## MANNER AND MEANS

The manner and means by which the conspirators and others sought to accomplish the objects and purposes of the conspiracy included, among others, the following:

3. Paragraphs 23 through 30 of Count One of this Information are re-alleged and incorporated by reference as if fully set forth herein.

4. John Eby, Marketer 1, Anita Vijay, Jai Vijay, Mariela Panganiban, and Co-conspirator 1 solicited and received from AKOP ATOYAN and Liana Karapetyan, and AKOP ATOYAN and Liana Karapetyan offered and paid John Eby, Marketer 1, Anita Vijay, Jai Vijay, Mariela Panganiban, and Co-conspirator 1, kickbacks in exchange for Medicare beneficiary referrals to the Agencies for home health care and hospice services.

5. Marketer 1 solicited and received from AKOP ATOYAN and Liana Karapetyan, and AKOP ATOYAN and Liana Karapetyan offered and paid Marketer 1, kickbacks in exchange for John Eby referring and causing the referral of Medicare beneficiaries from Hospital 1 to the Agencies for home health care and hospice services.

6. John Eby solicited and received from Marketer 1, and Marketer 1 offered and paid John Eby, kickbacks, including portions of the kickbacks AKOP ATOYAN and Liana Karapetyan paid Marketer 1, in exchange for John Eby referring and causing the referral of Medicare beneficiaries from Hospital 1 to the Agencies for home health care and hospice services.

7. AKOP ATOYAN and Liana Karapetyan instructed Marketer 1 to pay kickbacks to John Eby, in exchange for John Eby referring and causing the referral of Medicare beneficiaries from Hospital 1 to the Agencies for home health care and hospice services.

8. After referring and causing the referral Medicare beneficiaries to the Agencies, John Eby provided Marketer 1 the beneficiaries' names and, in turn, Marketer 1 provided the beneficiaries' names to AKOP ATOYAN and Liana Karapetyan.

9. After John Eby referred or caused the referral of a Medicare beneficiary to an Agency, AKOP ATOYAN and Liana Karapetyan paid Marketer 1 a kickback for the referral. In turn, and at AKOP ATOYAN and Liana Karapetyans' direction, Marketer 1 paid John Eby a portion of the kickback AKOP ATOYAN and Liana Karapetyan paid Marketer 1.

10. Anita Vijay and Jai Vijay solicited and received from AKOP ATOYAN and Liana Karapetyan, and AKOP ATOYAN and Liana Karapetyan offered and paid Anita Vijay and Jai Vijay, kickbacks in exchange for Anita Vijay referring and causing the referral of Medicare beneficiaries from Skilled Nursing Facility 1 to the Agencies for home health care and hospice services.

11. After referring and causing the referral of Medicare beneficiaries to the Agencies, Anita Vijay provided the beneficiaries' names to AKOP ATOYAN and Liana Karapetyan.

12. After Anita Vijay referred or caused the referral of a Medicare beneficiary to an Agency, AKOP ATOYAN and Liana Karapetyan paid Anita Vijay and Jai Vijay a cash kickback for the referral or directed Person 1 to pay Anita Vijay a kickback for the referral.

13. Mariela Panganiban solicited and received from Liana Karapetyan, and Liana Karapetyan offered and paid Mariela Panganiban, kickbacks in exchange for Mariela Panganiban referring and causing the referral of Medicare beneficiaries from Skilled Nursing Facility 2 to ANG and Excel for home health care services.

14. After referring and causing the referral of Medicare beneficiaries to ANG and Excel, Mariela Panganiban provided the beneficiaries' names to Liana Karapetyan.

15. After Mariela Panganiban referred or caused the referral of a Medicare beneficiary to an Agency, Liana Karapetyan paid Mariela Panganiban a cash kickback for the referral or directed Person 1 to pay Mariela Panganiban a kickback for the referral.

16. Co-conspirator 1 solicited and received from AKOP ATOYAN and Liana Karapetyan, and AKOP ATOYAN and Liana Karapetyan offered and paid Co-conspirator 1, kickbacks in exchange for Co-conspirator 1 obtaining Medicare beneficiary referrals to the Agencies for home health care and hospice services.

//
//

OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purposes, at least one of the conspirators committed, or caused to be committed, in the Eastern District of California, the following overt acts, among others:

17. On or about July 13, 2018, Anita Vijay sent a text message to Liana Karapetyan that contained a list of Medicare beneficiaries Anita Vijay referred to Excel.

18. On or about September 24, 2018, Liana Karapetyan offered to pay Marketer 1 and John Eby $300 each for Medicare beneficiary referrals to Excel Hospice.

19. On or about October 29, 2018, AKOP ATOYAN paid Marketer 1 $2,000 in cash for Medicare beneficiary referrals.

20. On or about November 27, 2018, Liana Karapetyan paid Marketer 1 $1,200 in cash for Medicare beneficiary referrals.

21. On or about December 13, 2018, Anita Vijay sent a text message to Liana Karapetyan that contained a list of Medicare beneficiaries Anita Vijay referred to ANG.

22. On or about December 23, 2018, AKOP ATOYAN offered John Eby $100,000 per year for 20 Medicare beneficiary referrals per month.

23. On or about January 6, 2019, AKOP ATOYAN paid John Eby $1,200 in cash for three Medicare beneficiary referrals from Hospital 1.

24. On or about February 1, 2019, Mariela Panganiban sent a text message to Liana Karapetyan that contained a list of Medicare beneficiaries Mariela Panganiban referred to ANG.

25. On or about February 6, 2019, AKOP ATOYAN and Liana Karapetyan offered to pay John Eby's wife kickbacks for Medicare beneficiary referrals.

26. On or about March 13, 2019, Mariela Panganiban sent a text message to Liana Karapetyan that contained a list of Medicare beneficiaries Mariela Panganiban referred to ANG.

27. On or about April 16, 2019, Anita Vijay sent a text message to AKOP ATOYAN that contained a list of Medicare beneficiaries Anita Vijay referred to ANG and Excel Hospice.

All in violation of Title 18, United States Code, Section 371.

//

FORFEITURE ALLEGATION: [18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(a), and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of the offenses alleged in this Information, defendant AKOP ATOYAN shall forfeit to the United States under Title 18, United States Code Sections 981(a)(1)(C) and 982(a)(2)(a), and Title 28, United States Code, Section 2461(c), all property, real and personal, which constitutes or is derived from the proceeds traceable to such violations, including but not limited to the following:

    a. A sum of money equal to the total amount of proceeds traceable to such offenses, for which the defendant is convicted.

2. If any property subject to forfeiture, as a result of the offenses alleged in this Information, for which defendant is convicted:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States, under Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture

Dated: April 29, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By: _____
MATTHEW THUESEN
Assistant United States Attorney

# United States v. Atoyan
## Penalties for Information

**Defendant**
**AKOP ATOYAN**

### COUNT 1:

VIOLATION:        18 U.S.C. § 1349 – Health Care Fraud Conspiracy

PENALTIES:        Up to 10 years of imprisonment, or fine up to $250,000 or twice the pecuniary gain or loss, or both imprisonment and a fine;
Up to 3 years of supervised release;
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 2:

VIOLATION:        18 U.S.C. § 371 – Conspiracy to Pay and Receive Health Care Kickbacks

PENALTIES:        Up to 5 years of imprisonment, or fine up to $250,000 or twice the pecuniary gain or loss, or both imprisonment and a fine;
Up to 3 years of supervised release;
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### FORFEITURE ALLEGATION:

VIOLATION:        18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c)

PENALTIES:        As stated in the charging document